Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

for the

District of Columbia

Division

|  |  |
|---|---|
| Mildred E. Francis | Case: 1:22–cv–00127 |
| | Assigned To : Chutkan, Tanya S |
| **Plaintiff(s)** | Assign. Date : 1/18/2022 |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Description: Pro Se Gen. Civ. (F-DECK) |
| **–v–** | Jury Trial: *(check one)*  ☐ Yes  ☒ No |
| Anonymous, Acting Director of DC Office of Zoning; Muriel Bowser, Mayor of the District of Columbia | |
| **Defendant(s)** | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

RECEIVED
Mail Room

JAN 1 9 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non–Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

## I.      The Parties to This Complaint

### A.      The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Mildred E. Francis |
| Address | 3007 26th Street, N. E. |

| | | |
|---|---|---|
| Washington, DC | DC | 20018 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | - |
| Telephone Number | 202-529-6286 |
| E-Mail Address | francis.mildred@gmail.com |

### B.      The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | -Unknown- |
| Job or Title *(if known)* | Acting Director. DC Office of Zoning |
| Address | 441 4th Street. NW. Suite 200S |

| | | |
|---|---|---|
| Washington, DC | DC | 20001 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | 202-727-6311 |
| E-Mail Address *(if known)* | dcoz@dc.gov |

☐ Individual capacity      ☒ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | Muriel Bowser |
| Job or Title *(if known)* | Mayor of Washington. DC |
| Address | 1350 Pennsylvania Avenue. N.W. |

| | | |
|---|---|---|
| Washington DC | DC | 20004 |
| *City* | *State* | *Zip Code* |

| | |
|---|---|
| County | |
| Telephone Number | 202-727-2643 |

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

E-Mail Address *(if known)*    eom@dc.gov

☐ Individual capacity    ☒ Official capacity

**Defendant No. 3**

Name

Job or Title *(if known)*

Address

| | | |
|---|---|---|
| *City* | *State* | *Zip Code* |

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

**Defendant No. 4**

Name

Job or Title *(if known)*

Address

| | | |
|---|---|---|
| *City* | *State* | *Zip Code* |

County

Telephone Number

E-Mail Address *(if known)*

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

14th Amendment's Equal Protection Clause; 14th Amendment's Due Process Clause; access to powers vested in the Board of Zoning Adjustment to resolve zoning-related isuues stated in  DC Official Code § 6-641.07(f), § 6-641.07(g)(1), § 6-641.07(g)(3), and § 6-641.07(g)(4).

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia."  42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

The unauthorized negligent or intentional conduct of the Acting Director of DC Office of Zoning deprived Francis of access to BZA consideration of a zoning compliance issue that arises due to the unusual lot shape and dimensions of property - created a decade preceding the enactment of the 1938 zoning regulations.  Also, see Claims #4, #3. #2 , #1 on attached pages.

The DC Mayor has granted adminstrative staff in the DC Office of Zoning carte blanche to issue specious assessments of submitted BZA applications and to abort processing and filing non-firm application submisssions with impunity.  Also, see Claim #5. #3, #2, #1 on attached pages.

## III.   Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

In staff facilities for DC Office of Zoning personnel.

B.      What date and approximate time did the events giving rise to your claim(s) occur?

Claim 1:  April 12 thru April 21, 2019; April 30 thru May 4, 2019.
Claim 2:  April 22, 2019; April 29, 2019; May 4, 2019,  May 21, 2020.
Claim 3:  April 29, 2019; May 4, 2019 thru September 16, 2020.
Claim 4:  April 10, 2019; April 22, 2019; April 29, 2019; May 4, 2019 thru September 16, 2020.
Claim 5:  April 12, 2019 to December 31, 2020 during normal business hours.

C.      What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what?  Was anyone else involved?  Who else saw what happened?)*

Five claims asserted on separate pages are attached.

FACTS-CORE:  The residential lot that concerns plaintiff has unusual shape, dimensions and topography; it presents as two land segements with a total area of 5247 sq ft joined to graphically resemble the letter Y missing a right arm.. A concrete walkway with a grass median follows along one edge of the lot from the street facing segment to the rear of the lot. Created and taxed as a residential lot prior to enactment of the Zoning Act of 1938, the rear land segment contains a leveled square concrete foundation with three walls but absent a dwelling . In the early 1950s the land contained six old growth trees when the lot was sold to a working class Black couple (Francis) with four children attending city public schools, who inherited ownership by laws of succession in 2003. The family residence was on an abuting lot purchased contemporously.  Plaintiff (Francis) is the second oldest offspring.

Early studies by the current owner revealed that construction of a detached residence of modest size (850 sq ft, less than 40 ft height, in 3 levels of living space) anywhere on the lot to accommodate aging in place requires prior approval of the Board of Zoning Adjustment (BZA) since compliance with all the regulations is impossible: placement in the front street-facing segment violates the building code requiring a minimum lot width of 37.5 ft, (the width of the front segment is 30 ft), raises the impermeability percentage to noncompliant levels above 50%, contravenes building size limits in the deed and requires retaining walls exceeding 5ft in height; placement in the rear segment will be non-compliant with the rear yard requirement (25 ft) and the front set-back requirement and is discouraged by technical staff.

A priori it cannot be determined what land segment the BZA will choose as the building site more in harmony with the general purpose and intent of the zoning regulations & Zoning Act of 1938. Written policy guidelines don't exist.

The Director of the DC Office of Zoning is authorized to determine the information requirements of appplications to the BZA. That position appeared to be vacant in 2018 and subsequently.  Francis developed and compiled relevant information into a written application to the BZA  (26 total page count with 9 pages of color prints and 6 pages of typed script) formally requesting consideration of the

property's traits and the appropriate site to locate a residence stating owner seeks an area variance to build a 3-story detached residence on an extant foundation site, not meeting the front-set back and rear yard depth requirements in the R-1-B District at the address 3009 26th St. N. E. Paper copies of the application submission were mailed to the named chairperson of the BZA, the named ANC 5C07 representative, the DC Office of Zoning (OZ) and the DC Office of Planning (OP) on March 29, 2019.

On April 1, 2019 a telephone caller, self-identified as the secretary to the BZA, left Francis a message that the applicaion could not be considered until the material was transformed into computer readable files and uploaded to the IZIS [Interactive Zoning Information System], software managed by OZ. The files were created and successfully sent by April 5, 2019 as evidenced in the computer generated reponse notice identifying the submission as "Case No. BZATmp480". Two weeks later on April 22, 2019, a computer notice to Francis' e-mail account informed the applicant that "Application No BZATmp480" was incomplete. An unnamed writer purported to find eight lacunae in the information submitted of such significance that the gaps disqualified Francis from access to a voucher to pay the filing fee.

On April 29, 2019 Francis responded to the unnamed writer's "defects notice" by uploading a written reply file to the IZIS account of Application No BZATmp480 . To refute four of the falsely claimed defects, location details were given with page and paragraph showing where information was provided and not missing: the refuted items were "DC Surveyor's Plat (to be obtained from the DC Surveyor's Office)"; "Statement of Existing and Intended Use"; "Statement of Public Outreach detailing efforts to apprise ANC  et al of application"; and "Burden of Proof Statement".  Three of the remaining "defects" had been omitted due to the onerous  financial expense and dearth of information that could be acquired : these three were (a) "Letter of authorization (if necessary)" is OZ-speak for a signed statement the applicant and an attorney have a formalized agreement the attorney will be the spokesperson for the applicant in all dealings with OZ and associated agencies; (b) "Form 135 (Zoning Self-Certification) "is OZ-speak for a two page form -the first page requires signatures of applicant and attorney stipulating awareness that the BZA relief sought may be insuffcient to obtain a building permit and concerned agencies [BZA, OZ and DC Dept of Consumer and Regulatory Affairs] will be

held harmless from any liability in that event. The top half of the page requires a digital check mark to indicate the type of relief sought is pursuant to [X § 1000.1 - Use Variance]; or [X § 1002.1 - Area Variance]; or [X § 901.1 Special Exception]. None of the categories depicts Francis' submission or grounds for seeking BZA relief; and (c) Detailed plans and elevations for "the proposed construction", as welll as summary data entered in the second page of Form 135 on said "proposed construction". No rule or regulation suggests that the BZA is proscribed from considering zoning related issues should resolution be possible without scrutiny of detailed proposed construction plans.

Francis' response included a request to re-examine the written text of Application No BZATmp480 to corroborate the submission is essentially a written request that BZA waive "building-construction-permit" related preconditions by showing they imposed undue hardship on the owner and the resulting information had marginal utility when unusual lot dimensions and shape prevail. Francis reiterated the request that the "decision be put in the hands of the expert panel of BZA members for a determination". On May 4, 2019, a computer notice with IZIS header banner was sent to Francis' e-mail account stipulated "Case. No. tmp480" as the topic with the message: "Thank you for submitting the document(s) in Appeal No Tmp480. D.C. Office of Zoning (DCOZ) will be titling this exhibit and reserves the right to modify the document type you selected".

Months elapsed with no word on the status of Appeal No Tmp480 from any OZ agent. No voucher to pay the filing fee was ever issued. Lacking official notification the case was not under active consideration, clerks in the DC Court of Appeals (DCCA) dissuaded Francis from seeking DCCA intervention until a year had lapsed.

On May 21, 2020 Francis succesfully filed pro se a petition for review of agency action wrongfully withheld by the DCOZ acting director with the D.C. Court of Appeals (DCCA); the assigned docket number was No.20-AA-374. The submission consisted of a completed one-page DCCA complaint Form 15 for pro se plaintiffs and a single page atttachement, the May 4, 2019 computer notice with IZIS logo header that Francis had received. Myriad filings by city attorneys ensued. On December 2, 2020 Francis' petition for review was dismissed by the Court for lack of jurisdiction. Francis filed a motion to re-hear the petiton for review on December 20, 2020 that was

subsequently denied.

In summary, Francis' waiver application seeks BZA consideration of a residence's placement on a city lot that poses a host of zoning compliance issues uncoupled from the architectural details of an imagined construction outcome, a separation that poses no risk of prejudicing the rights of any party, except the owner however it is resolved by the BZA. The Mayor has radically and fundamentally misconstrued and misapplied the words of the statute authorizing BZA activities and functions by refusing to issue a voucher to enable payment of the filing fee.   Under the circumstances of this case, the applicant owner is entitled to seek BZA consideration for a predicament of long standing that is not owner initiated, was unexpected after years of property maintenance and tax payments, and a matter the BZA is empowered to resolve.  Without the voucher the filing fee cannot be paid; absent payment Francis' application submission is not "filed" with the BZA by the responsible OZ administrator and the unfiled submission is set aside. If the Mayor's advisors had deliberately selected procedures to disadvantage applications from non-firm owners being accepted, they couldn't have done it more completely.

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

No physical injusies occurred.

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

> The desired outcome is that the Court orders the responsible city agent to :  a) reactivate Francis' waiver application to the BZA; b) issue a voucher for filing fee payment to the owner; c) enter into the BZA case record the number assigned the application; d) notify appropriate individuals to seek comments on the disposition.; e) follow regulations to schedule a BZA hearing date and notify Francis 30 days in advance.
>
> Further, the Court orders the Mayor to investigate and correct technical problems at the DC Surveyor's Office that prevent creation of the approved plat showing the boundaries of existing structures at the property; the property owner must receive a copy of the plat at least 30 days before the scheduled BZA hearing date;
>
> Finally, the Court orders the Office of Zoning to produce a Zoning Map showing rooflines in contingent and surrounding lots with property boundaries in reproducible colors when photocopied; a zoning map included in the application (Exhibit 4) was uninformative since all distinguishing features were washed out;  the Office of Planning includes in its BZA presentations an area map from the GIS that retains its distinguishing features.

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:  JANUARY 18, 2022

Signature of Plaintiff    *Mildred E. Francis*

Printed Name of Plaintiff    Mildred E. Francis

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

**B.**     **For Attorneys**

Date of signing:

Signature of Attorney
Printed Name of Attorney
Bar Number
Name of Law Firm
Address

|  | City | State | Zip Code |
|---|---|---|---|

Telephone Number
E-mail Address

**CLAIM # 1.**  AN OZ ADMINISTRATIVE AGENT WRONGFULLY REFUSED TO ISSUE A FILING FEE PAYMENT VOUCHER AFTER RECEIPT OF THE NON-FIRM OWNER APPLICATION TO THE BZA SUBMITTED BY FRANCIS AND UNFAIRLY ABORTED THE FILING PROCESS WITHOUT JUSTIFICATION.

C. Facts Underlying this Claim:

1-1.  OZ staff did not acknowledge receipt of 2 paper copies of the application delivered on April 4, 2019.  No review letter from the Director of OZ or Acting Director was ever issued; an official response to the application with its disposition was not sent to the applicant.

1-2.  No voucher was made available 5 days post submission or ever; an applicant is unable to "file" a BZA application without a voucher to pay the filing fee.  OZ agents control and prevent access to the BZA by denying filing fee payment vouchers to applicants lacking the means to employ legal representation to certify that the relief sought is necessary "in order for the proposed structure to be erected".  The relief sought in Francis' application is a BZA determination that an extant foundation on the northeastern corner of the lot's rear segment can be the location of a residence if noncompliance with the front setback and rear yard requirements are the only regulations not strictly adhered to. Pictures of 5-6 residences with different square footage will be shown in the presentation to the BZA.  Not all information an applicant expects to present to the BZA can be made available in an acceptable format to OZ screeners.

1-3.  Francis' application is not a request for a "variance specified in Subtitle X § 1002" common among firm owner applications. In Francis' application the evidence is convincing that due to the attributes of the property strict compliance with the rear yard and front set-back requirements would result in exceptional and undue hardship upon the property owner.  The Acting Director was neither qualified nor authorized to decide what are necessary information

requirements for non-firm owner applications or what deviations from the standards for firm owner applications are unacceptable.

1-4.  At a September 2017 meeting an OZ functionary stipulated a residence had to be sited in the front segment of the lot (30 ft wide). The expense in time and money to create a designed residence is considerable and grows into an onerous speculative venture requiring several variances from the BZA if an abode is located in the front segment because its width - street facing- is less than the required minimum 37.5 ft lot width for residence construction in the neighborhood.  An additional four problem factors were listed in the application as unavoidably having a negative impact should a dwelling be erected. Others will be added in the presentation.

1-5.  A priori it cannot be determined what land segment the BZA will chose as the building site more in harmony with the general purpose and intent of the zoning regulations and land use policies.  Property tax payments have never been delinquent and at least two adult members of the ownership family resided in the city remitting income taxes on earned wages yearly from 1953 until the present 2021.  The lot was maintained solely to build an owner-occupied residence when needed.  Francis is not engaged in business or speculative ventures.  An ordinary risk-adverse citizen does not create detailed architectural plans prior to knowing where a house can be built.

**CLAIM # 2**.  AN OZ ADMINISTRATIVE AGENT UNREASONABLY DISQUALIFIED THE UNCONVENTIONAL LEGITIMATE GROUNDS RELIED ON IN FRANCIS' NON-FIRM OWNER APPLICATION TO THE BZA AND MANDATED ONLY CONVENTIONAL GROUNDS FOR FIRM OWNER APPLICATIONS WERE ACCEPTABLE, WITHOUT THE AUTHORITY TO DETERMINE POLICY.

C.  Facts Underlying Claim #2:

2-1.  Two weeks after Francis' application was submitted to IZIS, on April 22, 2019, a computer notice sent to Francis' e-mail account stipulated that "Application No BZATmp480" was incomplete.  An anonymous writer purported to find eight lacunae in the information submitted of such significance that the gaps disqualified Francis from access to a voucher to pay the filing fee. The number of identified gaps was inflated.

2-2.  Francis' application to the BZA focused on the lot characteristics that prevent design of a building in compliance with all zoning regulations and appealed for an area variance to declare the extant foundation in the rear land segment the authorized site to build a residence in compliance with all zoning regulations, except the front-set back and rear yard requirements; it describes how the strict application of these two requirements would impose exceptional and undue hardship on the applicant.

2-3.  The official authorized to determine information requirements of applications to the BZA is the Director of the DC Office of Zoning (OZ).  From mid- 2018 and onwards, the name of the appointed Director or Acting Director of OZ was missing from city websites.  The positions were apparently vacant. Nothing suggested the email sender of April 22, 2019 was officially responsible or an authorized OZ agent with ability to set policy.

2-4.  In reality, four of the purported eight defects were nonexistent since the information had been in the application materials; the OZ screener had not read the submission.  A fifth defect was an inadvertent omission, later corrected, with 3 photos of the front, back, and side of the 3 ft tall foundation walls, showing undifferentiated bramble, ivy, shrubs, etc.  The remaining three purported information defects related to building construction-associated preconditions required of firm owner applicants who must apply for a building permit prior to seeking BZA relief.  (ie Form 135 (Zoning Self-Certification); detailed plans and elevations for the proposed construction; letter of authorization of legal representation,).

2-5.  The unnamed writer stipulated that complete information was due in five business days and that if all defects were not corrected "within the allotted time your application will be voided and a new application will have to be submitted".

2-6.  The unnamed Acting Director knew that Francis' waiver application was not a Subtitle X § 1002 request for variance relief to the BZA and inappropriate standards had been used to deprive the owner of the opportunity to have the property issue fairly adjudicated by the BZA.

**CLAIM # 3**

AN ANONYMOUS OZ ADMINISTRATOR ACKNOWLEDGED FRANCIS' APPLICATION
SUBMISSION WAS A FORMAL REQUEST FROM A NON-FIRM OWNER TO THE BZA
TO WAIVE PERFORMANCE OF CONSTRUCTION-ASSOCIATED PRE-CONDITIONS
IMPOSED ON FIRM OWNER APPLICANTS WITH CONVENTIONAL GROUNDS FOR
VARIANCE RELIEF APPEALS, AND CREATED THE FALSE IMPRESSION FRANCIS'
WAIVER APPLICATION WAS REFERRED TO THE OZ DIRECTOR OR HIS/HER
DESIGNEE TO SCHEDULE CONSIDERATION.

C. Facts Underlying Claim #3:

3-1. A reply to the unnamed writer of the April 22, 2019 defects notice was created and
filed to accounts of OZ agents on April 29, 2019, requesting a reading of the text of Application
No BZATmp480 to corroborate the submission is a request to the BZA to waive "the building
permit-construction associated preconditions" since they imposed undue hardship on the owner
and their information content had marginal utility when unusual lot dimensions and shape
prevail. The BZA is not proscribed from considering a zoning issue or question that can be
resolved without scrutiny of detailed construction plans. The absence of "detailed plans &
elevations for the proposed construction" is not a disqualifying trait for BZA consideration since
Francis reiterated the request that the "decision be put in the hands of the expert panel of BZA
members for a determination".

3-2. On May 4, 2019, a computer notice with an IZIS logo header was sent to Francis' e-
mail account; it stipulated that "Case. No. tmp480" was the message focus and its content was as
follows: "Thank you for submitting the document(s) in Appeal No Tmp480. D.C. Office of

Zoning (DCOZ) will be titling this exhibit and reserves the right to modify the document type you selected".

3-3.  The anonymous OZ agent was deliberately deceitful in the May 4, 2019 e-mail that closed Francis' IZIS account with the title change to "Appeal No. Tmp480" suggesting an official assessment would occur or was planned, when in fact "the Director of the Office of Zoning" did not accept or file or set down for a hearing Francis' waiver application, as city attorneys later admitted in Court filings on September 16, 2020.  The ruse was unwarranted and inconsistent with the moral responsibility of government.

3-4.  The responsible acting OZ director did not file Francis' waiver application, contrary to regulations and dispositive findings that BZA granting the waiver will not prejudice the rights of any party.   The mishandling of the application breached principles of fair administration.

**CLAIM # 4.** THE ACTING OZ DIRECTOR DID NOT FILE FRANCIS' WAIVER APPLICATION, DID NOT ELICIT OTHER INFORMATION TO PROCESS THE APPLICATION EXPEDITIOUSLY AND DID NOT ISSUE A WRITTEN DECISION TO CLOSE THE APPEAL UNFILED; THE PROFILED CONDUCT BREACHED PRINCIPLES OF FAIR ADMINISTRATION.

.   C. Facts Underlying Claim #4:

4-1. In the U.S., historical race and class discrimination have produced deep gaps in generational wealth. According to the Federal Reserve, white families have a median wealth of $188,200 compared with $36,000 for Hispanic families and just $24,000 for Black families (2021). The Brookings Institute estimates that only 10 percent of Black families inherit any money, about $100,000 on average, compared with about 30 percent of white families who receive about $200.000. (2021).

4-2. The acting OZ director was complicit in imposing barriers to Francis' access to BZA consideration and resolution of property status detailed in the application. He/she did his job in a negligent fashion allowing an anonymous person to falsely claim four items missing that were among the submission's content; he/she had ample time to review the submission (from April 4-29, 2019) and clarify discrepancies. Of the four correctly identified missing items the listed eighth item is "8) Letter of authorization (if necessary)", which is OZ-speak for a formal agreement with an attorney or architect to act as Francis' agent in this matter and reveals the writer's confusion about his/her function. The outlay of monies for such an arrangement is an estimated 16K minimum and beyond the means of a Black non-firm owner applicant with no business interests.

4-3.  Inflexible thinking afflicted the unnamed acting OZ director who did not accept Francis' assertion and showing that "by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations" the strict application of the front-set back and rear yard requirements would result in exceptional and undue hardship on the owner.  Unreasonably, he/she demanded details of a non-existing "proposed construction" since it is a stipulated element in firm owner applications (the desire to enlarge living space motivates most variance requests) but it isn't essential for the variance relief sought in Francis' waiver application.

4-5. Logically, the building-construction aspects of a residence that may be erected on the lot can be uncoupled from where the home is placed on the lot – an issue solely within the purview and powers of BZA. The unnamed acting OZ director knew that both incomplete information and faulty assumptions mislead the agent but did not reconsider.

4-5. Lacking documentation that "Appeal No tmp480'" was closed or not under active consideration, a year elapsed before clerks at the DC Court of Appeals (DCCA) allowed Francis to file a petition for review of the OZ non-action on "Appeal No. tmp480".

**CLAIM #5:** THE MAYOR FAILED TO STAFF THE OZ WITH APPROPRIATELY
TRAINED PERSONNEL AND ACQUIESCED IN STAFF PREFERENCES FOR
PROCEDURES THAT RESULT IN DEFACTO RACIAL DISCRIMINATION.

C.  Facts Underlying Claim #5:

5-1   Oversight hearings for the DC Office of Zoning and the DC Office of Planning
conducted by the DC Council have documented increases in the number of BZA cases filed with
the DCCA over the years 2016-2017 [March 29, 2018].  Denial rates for variance requests were
viewed as too low by Council Chairman Mendelson; an explanation provided by an OZ official
was "that most cases that would otherwise be denied are withdrawn prior to a decision being
rendered, thereby skewing the figures".   Bias is evidently an influential factor.

5-2.  In early 2019 neither a Director of OZ nor an appointed acting director to perform
routine functions of the job existed.  The Director is authorized to set the content and form of
applications and appeals to the BZA; no written content requirements or suggestions for waiver
applications exist.  Yet, an unknown OZ functionary presumed to be empowered to set pre-
conditions for completing the waiver application filing that were quite costly- in time and
monies- to meet, especially for non-firm owners who can't access tax breaks and subsidies
available to firms and property developers.  Owner-applicant Francis was punished for omitting
the very information items that the applicant requests be waived by the BZA in considering
Francis' variance relief requirements.  The DC Mayor has tacitly authorized this strategy to block
the less affluent from BZA access.   "DCRA's main customers are developers.  They fast-track
permits if you spend over $1million." [Zeiesel 2021]   The DCRA has faced years of criticism
from residents, businesses and the council; some argue "reform attempts over the years have not

succeeded in making the agency effective and problems persist today" [Brice-Sandler 2021].   At year's end the DC Mayor submitted plans to split the DCRA into two agencies.

5-4.   Francis initiated the filing of a variance relief application to the BZA but did not acquire a filing fee payment voucher from the OZ agent so a "filed" application does not exist. The statutory prerogatives of the DC Mayor do not include redefining the word "filing" as a two-step process performed by an unknown OZ functionary programmed to deny a voucher for the BZA filing-fee payment and to abort the screening without a final disposition. These may count as "withdrawn" in year-end metrics for the OZ.

5-5.   The DC Mayor countenanced biased conduct incongruent with principles of fair administration by (a) installing a computer record management system that restricts the option for area variance relief  to one – ie Subtitle X § 1002 - preferred by firm owners and unsuited to differently motivated non-firm owners; (b) allowing ad hoc deviations from administrative standards -e.g. 5 days was the promised time to receive review results but 17 days elapsed; (c) eliminating use of names or staff identifiers that derail accountability inquiries; (d) limiting application revision total time to 5 days – the minimum recommended in the regulations to correct a single deficiency; (e)  authorizing OZ staff to abort processing applications to the BZA for variance relief submitted by non-firm owners who lack legal representation.