### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MILDRED E. FRANCIS,** | |
| Plaintiff, | |
| v. | Civil Action No. 22-127 (TSC) |
| **ACTING DIRECTOR, D.C. OFFICE OF ZONING**, *et al.*, | |
| Defendants. | |

### MEMORANDUM OPINION

Plaintiff Mildred E. Francis, proceeding *pro se*, has sued the Acting Director of the D.C. Office of Zoning and D.C. Mayor Muriel Bowser under 42 U.S.C. § 1983.  She alleges that the Office of Zoning's refusal to accept her zoning variance application violates her rights to Equal Protection and Due Process under the Fourteenth Amendment, as well as her right to "access to powers vested in the Board of Zoning Adjustment."  Compl. at 4.[1]  Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 6.  For the reasons set forth below, the court will GRANT Defendants' motion.

### I.      BACKGROUND

D.C. regulations allow property owners to apply to the Board of Zoning Adjustment ("BZA") for a "variance" from zoning requirements.  D.C. Code § 6-641.07(g)(3).  Within five days of an application being filed with the BZA, the Director of the Office of Zoning "shall review [it] for completeness."  11Y D.C.M.R. § 400.1.  Complete applications are scheduled for

---

[1] Because the Complaint's internal pagination is not fully consecutive, the court refers to the page numbers in the electronic PDF file, ECF No. 1.

a BZA hearing.  *Id.* §§ 400.3–400.6.  If an application is incomplete, however, the Director

"shall notify the applicant in writing of any deficiency" and provide the applicant with at least

five days to make necessary corrections.  *Id.* § 400.2.  "If the applicant fails or refuses to correct

the deficiencies in the application by the date stated, the Director shall not accept the application

for filing."  *Id*.

A variance application must meet certain requirements, three of which are particularly

relevant here.  First, the application must contain either a "memorandum from the Zoning

Administrator stating that a building permit application has been filed and certifying the required

zoning relief," or a "certification by an architect or attorney" licensed to practice in the District

stating that "[t]he relief requested is required in order for the proposed structure to be erected or

the proposed use to be established."  *Id.* § 300.6.  Second, it must contain a "plat, drawn to scale

and certified by a survey engineer licensed in the District of Columbia or by the D.C. Office of

the Surveyor, showing the boundaries and dimensions of the existing and proposed structures

and accessory buildings and structures on the specific piece of property, if necessary."  *Id*.

§ 300.8(b).  And finally, the application must include "[a]rchitectural plans and elevations in

sufficient detail to clearly illustrate any proposed structure to be erected or altered, landscaping

and screening, and building materials."  *Id*. § 300.8(c).

Plaintiff submitted a variance application in March 2019, seeking exemptions from

zoning rules in order to build a new structure on her property.  Compl. at 6–7.  Upon reviewing

the application, however, the Office of Zoning found it incomplete and notified Plaintiff of eight

deficiencies.  *Id.*  Plaintiff responded, asserting that some of the parts of the application identified

as missing were in fact present, and that other parts were intentionally "omitted due to the

onerous financial expense and dearth of information that could be acquired," including parts

corresponding to the three requirements described above: (1) a certification from an architect or attorney, as well as (2) dimensions of and (3) architectural plans for the proposed structure. *Id.* at 7–8.[2]  The Office of Zoning did not accept Plaintiff's application or schedule it for a BZA hearing. *Id.* at 8.

In 2020, Plaintiff challenged the Office's rejection of her application in the D.C. Court of Appeals, *id.*, but her case was dismissed for lack of jurisdiction, *see* Mot. to Dismiss, Ex. F (Order, *Francis v. D.C. Office of Zoning*, No. 20-AA-374 (D.C. Dec. 2, 2020)).  The Court of Appeals noted that "[t]he rules governing BZA's rules of practice and procedure, as promulgated by the Zoning Commission, delegate the authority to review applications to [the Office of Zoning] and unambiguously require [it] to reject noncompliant applications." *Id*. at 1–2 (citation omitted).  Accordingly, it held, if Plaintiff "believes [the Office of Zoning] abused its discretion in rejecting her application, her recourse would be to seek review of that decision in the Superior Court for the District of Columbia followed by an appeal (if necessary) to this court." *Id*. at 2 (citations omitted).

## II.  LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when the facts asserted allow the court to "draw the reasonable inference that the defendant is

---

[2] Plaintiff does not allege that her variance application included a Zoning Administrator memorandum, the other document that could satisfy the first requirement.  *See supra* at 2.

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Pro se* complaints are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nonetheless, a pro se plaintiff must still "plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

Plaintiff has failed to state a claim upon which relief may be granted. She alleges violations of the Due Process and Equal Protection clauses, and seeks relief against Defendants under 42 U.S.C. § 1983. Compl. at 4. Although her Complaint cites the Fourteenth Amendment, *id.*, the court will construe her claims as relying on the Fifth Amendment, as they must be when raised against District of Columbia entities. *See Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (Due Process); *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 80 (D.D.C. 2017) (Equal Protection). In addition, she does not cite an independent source of law granting her a right of "access to powers vested in the Board of Zoning Adjustment," Compl. at 4, so the court will treat that alleged right as subsumed within her Due Process and Equal Protection claims. Ultimately, however, neither constitutional claim can succeed.

### A. <u>Due Process</u>

Plaintiff has not pleaded that Defendants deprived her of a cognizable Due Process interest. "In order to make out a violation of due process, the plaintiff must show the Government deprived her of a 'liberty or property interest' to which she had a 'legitimate claim of entitlement,' and that 'the procedures attendant upon that deprivation were constitutionally insufficient.'" *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014) (quoting *Ky. Dep't*

*of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).[3]  Generally, such liberty or property interests

must be created by law.  *See, e.g., Atherton*, 567 F.3d at 689 (liberty interests arise from

Constitution or state law) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)); *UMC Dev.,

LLC v. District of Columbia*, 401 F. Supp. 3d 140, 151 (D.D.C. 2019) (property interests arise

from independent sources like state law) (quoting *Webb's Fabulous Pharmacies, Inc. v.

Beckwith*, 449 U.S. 155, 161 (1980)).  Accordingly, "[a] mere unilateral expectation or an

abstract need is not a property interest entitled to protection."  *UMC*, 401 F. Supp. 3d at 151

(quoting *Beckwith*, 449 U.S. at 161).

Plaintiff's allegations do not establish that she had a legitimate claim of entitlement to

"access . . . powers vested in the Board of Zoning Adjustment" after submitting an incomplete

variance application.  Compl. at 4.  The provisions she cites in D.C. Code § 6-641.07 do not

support that proposition.  *See id.*  Subsection (f) merely provides for an appeal of BZA decisions

and an associated filing fee, and Subsection (g) lays out the BZA's powers to make zoning

decisions.  The authorizations in both sections presuppose that an application has reached the

BZA for decision.  As explained above, that does not happen until the Office of Zoning's

Director has determined that an application is complete.  *See* 11Y D.C.M.R. §§ 400.3–400.6.

Indeed, the regulations command that the Director "shall not accept" an incomplete application,

and therefore may not transmit it to the BZA.  *Id.* § 400.2.  The Complaint itself acknowledges

that Plaintiff's variance application was incomplete, and that the deficiencies caused the Director

---

[3] The court understands the Complaint to assert a procedural, rather than substantive, Due
Process challenge.  But the latter is not plausibly pleaded either.  "Only a substantial
infringement of state law prompted by personal or group animus, or a deliberate flouting of the
law that trammels significant personal or property rights, qualifies for relief" under that theory.
*Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988).

not to accept it.  Compl. at 7–8.  There is consequently no basis in law for Plaintiff to assert a

legitimate claim of entitlement.

Plaintiff argues that Defendants should have excused the deficiencies in her application

"due to the onerous financial expense and dearth of information" and provided her a voucher to

cover the filing fee.  *Id.* at 7–9.  But no law requires those actions.  The regulations do state that

the BZA "*may*, for good cause shown, waive" some of its rules or practice or procedure.  11Y

D.C.M.R. § 101.9 (emphasis added).  But that waiver is not mandatory, even assuming there is

good cause for it.  Plaintiff therefore had no more than a unilateral expectation that her

incomplete application would be accepted and evaluated by the BZA, rendering inapposite her

citation to cases like *Goldberg v. Kelly*, 397 U.S. 254, 261–62 (1970), *Vitek v. Jones*, 445 U.S.

480, 491 (1980), and *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428–33 (1982).  *See* Pl.'s

Opp'n to Mot. to Dismiss at 4–5, ECF No. 8.  Consequently, the Complaint fails to state a Due

Process claim.[4]

## B.  **Equal Protection**

Plaintiff likewise fails to sufficiently plead an Equal Protection claim.  When alleging

racial discrimination, such a claim may take one of at least three forms:

> A plaintiff may allege [1] that the government has expressly classified individuals
> based on their race; [2] that the government has applied facially neutral laws or
> policies in an intentionally discriminatory manner; or [3] that facially neutral laws
> or policies result in racially disproportionate impact and are motivated by a racially
> discriminatory purpose.

*Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 63 (D.C. Cir. 2016) (citations and quotations

omitted).

---

[4] Because the court finds that Plaintiff failed to allege a cognizable interest under the Due
Process Clause, it does not reach Defendants' alternative argument that any interest is
adequately protected by the District's administrative procedures.

Plaintiff's allegations most resemble the third form of Equal Protection claim—that is, disparate racial impact.  The Complaint does not identify any express racial classifications, or that Defendants applied facially neutral laws or policies in an intentionally discriminatory manner.  Thus, the first two categories are inapplicable here.  Instead, the Complaint alleges that "the Mayor . . . acquiesced in staff preferences for procedures that result in defacto racial discrimination," Compl. at 20 (formatting modified), and more broadly that "[t]he outlay of monies" required to remedy the deficiencies in her variance application were "beyond the means of a Black non-firm owner applicant with no business interests," noting that "historical race and class discrimination have produced deep gaps in generational wealth," placing Black families at a significant disadvantage, *id.* at 18.  Those allegations could suffice to plead that Defendants' policies "result in racially disproportionate impact." *Rothe Dev., Inc*., 836 F.3d at 63.

Nonetheless, this claim cannot succeed because Plaintiff does not plead the necessary second element of a disparate-impact claim: that Defendants' policies "are motivated by a racially discriminatory purpose." *Id.*; *see also Roberts*, 741 F.3d at 160 ("[A]bsent an overtly discriminatory classification, 'proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.'" (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 265 (1977))).  Plaintiff does not allege that Defendants were even aware of their policies' allegedly disparate impact, much less that they took the actions of which she complains because of racial animus.  *See Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 258 (1979) ("'[D]iscriminatory purpose' implies more than intent as volition or intent as awareness of consequences; it implies that the decision maker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.").  Nor does she allege any irregularities that could give rise to an

inference of discriminatory purpose, such as "'a clear pattern' of discrimination, 'unexplainable on grounds other than race,'" *Smith v. Henderson*, 54 F. Supp. 3d 58, 70 (D.D.C. 2014) (quoting *Arlington Heights*, 429 U.S. at 266), or "departures from normal procedures" or "factors normally considered in reaching a decision," *Bellinger*, 288 F. Supp. 3d at 80 (citing *Arlington Heights*, 429 U.S. at 266–68). No matter how liberally construed, Plaintiff's allegations fail to state an Equal Protection claim.

## IV.    CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 6. A corresponding Order will accompany this Memorandum Opinion.


Date: July 28, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge